# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **ESTATE OF JAMES WILSON,** | } |
| | } |
| **Plaintiff,** | } |
| | } |
| v. | } Case No. 7:11-CV-1037-RDP |
| | } |
| **ALABAMA DEPARTMENT OF** | } |
| **MENTAL HEALTH, et al.,** | } |
| | } |
| **Defendants.** | } |

## MEMORANDUM OPINION AND ORDER

This case is before the court on Defendant Alabama Department of Mental Health's ("Defendant") Motion to Dismiss Amended Complaint (Doc. # 23), filed June 6, 2011. The Motion has been fully briefed. (Docs. # 25 and 26).

Having considered the briefs and evidentiary submissions, the court finds that the Motion to Dismiss Amended Complaint (Doc. # 23) is due to be denied for the reasons set out below.

**I.      Background**

Plaintiff filed an amended complaint ("complaint") in this court on May 19, 2011 against all Defendants.[1] (Doc. # 20). The complaint purports to assert claims for violations of 42 U.S.C. § 1983, the Rehabilitation Act of 1973 ("Rehabilitation Act"), the Civil Rights Remedies Equalization Act, the Americans with Disabilities Act of 1990 ("ADA"), and various state law causes of action.

---

[1] Plaintiff filed its initial complaint (Doc. # 1) on March 22, 2011, and Defendant moved to dismiss the complaint on April 14, 2011 (Doc. # 6). Plaintiff moved to amend its complaint on May 17, 2011 (Doc. # 17), which the court granted on May 19, 2011 (Doc. # 19). Accordingly, Defendant's initial motion to dismiss (Doc. # 6) was deemed moot. Some of the other Defendants, who are not involved in the current motion, also submitted motions prior to Plaintiff's motion for leave to amend its complaint and these motions were similarly deemed moot.

Nevertheless, Plaintiff notes that no claim is made against Defendant under § 1983. Indeed, the briefing now has made clear that Plaintiff is only asserting discrimination claims against Defendant under § 504 of the Rehabilitation Act, as amended, 29 U.S.C.A. § 794, and the ADA, 42 U.S.C. § 12101 *et seq*. (together "the Acts"). (Doc. # 20 at ¶ 33).[2]

James Wilson was a resident patient at Partlow Developmental Center ("Partlow") until his death on or about April 6, 2009. (Doc. # 20 at ¶¶ 9-10). Wilson was a qualified individual under the Acts and suffered from mental and physical disabilities. (Doc. # 20 at ¶ 35). Defendant maintains Partlow, "a facility for individuals with developmental and mental disabilities."[3] (Doc. # 20 at ¶ 3). According to a survey conducted by Defendant, Partlow conditions "pose an immediate jeopardy to the health and safety of the clients." (Doc. # 20 at ¶ 27). Plaintiff alleges that the individual Defendants[4] failed in their duties to care for Wilson and did not follow proper protocol following Wilson's death, thereby violating the policies of both Partlow and Defendant. (Doc. # 20 at ¶¶ 12-19). Plaintiff further claims that this conduct constituted discrimination against Wilson based on his disabilities because the Partlow employees' failure to do what was required of them in caring for Wilson caused him to be excluded from or denied the benefits of Defendant's services,

---

[2] In Defendant's Motion to Dismiss, Defendant asserts that the claims in Count II of Plaintiff's complaint - claims under the Rehabilitation Act and the ADA- are the only claims brought against Defendant. In Plaintiff's response, Plaintiff does not dispute this assertion and Plaintiff only discusses Count II. Therefore, the court finds that the only claims brought against Defendant are the claims contained in Count II.

[3] Plaintiff did not state in its complaint, although it can be inferred, that Defendant maintains Partlow. The court takes judicial notice that Defendant maintains Partlow. *See* Fed. R. Evid. 201(b); *see also Wyatt By and Through Rawlins v. Rogers*, 985 F. Supp. 1356, 1404 (M.D. Ala. 1997) (Alabama Department of Mental Health operates Partlow).

[4] The individual Defendants include Jakinda Holman, Janice Walker, Jennifer Harkins, Leon Williams, and Hattie Spencer. These individuals are not involved in the current motion and the court will not address Plaintiff's claims against them. Any references to "Defendant" solely refer to the Alabama Department of Mental Health.

programs, or activities. (Doc. # 20 at ¶¶ 36, 38, and 42). Plaintiff asserts that Defendant's failure to provide its patients with safe conditions violated Wilson's Fourteenth Amendment rights and the Acts. (Doc. # 20 at ¶¶ 43-44 and 47-49). Plaintiff claims that Defendant should be held liable for the actions of the Partlow employees based on the doctrine of respondeat superior. (Doc. # 20 at ¶¶ 38-50).

Defendant filed its motion to dismiss on June 6, 2011, arguing that the claims against Defendant in Count II should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for the failure to state a claim upon which relief can be granted. (Doc. # 23 at 2). Defendant argues that Plaintiff's claims under the Rehabilitation Act are conclusory and do not contain specific allegations of discriminatory conduct by Defendant. (Doc. # 23 at 2).[5]

Plaintiff filed its opposition to the motion on June 9, 2011. (Doc. # 25). Plaintiff reiterates that Wilson was denied medical care by Defendant's employees, and asserts that this denial amounts to (1) discrimination and (2) the unlawful exclusion from a public entity's program (Doc. # 25 at 2), and that Defendant is liable for these wrongful acts under the theory of respondeat superior. (*Id.*). More specifically, Plaintiff argues that Defendant's discrimination against Wilson violated his Fourteenth Amendment rights by failing to provide him with safe conditions of confinement. (Doc. # 25 at 3). Plaintiff also asserts that under *United States v. Georgia*, 546 U.S. 151 (2006), state agencies may be subject to suit for claims under Title II of the ADA. (Doc. # 25 at 3).

---

[5] Defendant also argues that it is immune from violations of the ADA and cites *Bd. of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 368 (2001). (Doc. # 23 at 3). In Defendant's Reply to Plaintiff's Response (Doc. # 26), Defendant clarifies this statement and concedes that under certain circumstances, state agencies can be sued under the ADA. (Doc. # 26 at 6). Defendant then argues that in this case, those circumstances are not present.

Defendant filed its reply on June 16, 2011. (Doc. # 26). Defendant concedes that it is a recipient of federal funds, that Wilson was disabled, and that Wilson is therefore subject to § 504 of the Rehabilitation Act. (Doc. # 26 at 3). However, Defendant argues that Plaintiff's discrimination claims under both Acts "lack [] specificity or meaningful assertions of discrimination against [Wilson] on the basis of his disability." (Doc. # 26 at 3). Specifically, Defendant argues that Plaintiff's claim under the Rehabilitation Act is not sufficient to survive a motion to dismiss. (Doc. # 26 at 4). Defendant asserts that Plaintiff's ADA claim cannot survive a motion to dismiss because Plaintiff did not properly allege that Wilson's constitutional rights were violated as Plaintiff has not specifically alleged that Wilson was *involuntarily* confined. (Doc. # 26 at 7).

## II.  Standard of Review

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertion[s]" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the complaint in the light most favorable to the non-moving party. *Henderson v. Reid*, 371 F. App'x 51 (11th Cir. 2010). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129

S.Ct. 1937, 1949 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*

The Supreme Court has recently identified "two working principles" for a district court to use in applying the facial plausibility standard. First, in evaluating motions to dismiss, the court must assume the veracity of well-pleaded factual allegations; however, the court does not have to accept as true legal conclusions when they are "couched as [] factual allegations." *Iqbal*, 129 S. Ct. at 1950. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* Application of the facial plausibility standard involves two steps. Under prong one, the court must determine the scope and nature of the factual allegations that are well-pleaded and assume their veracity; under prong two, the court must proceed to determine the claim's plausibility given the well-pleaded facts. That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Id.* If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Id.*

**III.   Analysis**

Section 504 of the Rehabilitation Act provides that any program or activity receiving federal funds cannot exclude from the participation in, deny the benefits of, or discriminate against any disabled individual based on his or her disability. *T.W. ex rel. Wilson v. School Bd. of Seminole Cnty., Fla.*, 610 F.3d 588, 603 (11th Cir. 2010); 29 U.S.C. § 794(a). The ADA prohibits any public entity from excluding from participation in or denying the benefits of its services, programs, or activities, or discriminating against a disabled individual based on his or her disability. *Albra v. City*

*of Fort Lauderdale*, 232 F. App'x 885, 889 (11th Cir. 2007); 42 U.S.C. § 12132.  With one exception not relevant here,[6] the elements of a claim under the Rehabilitation Act are the same as that under the ADA.  The Eleventh Circuit "re[lies] on cases construing [the Rehabilitation Act and the ADA] interchangeably" because "the same standards govern discrimination claims" under both statutes.  *T.W. ex rel. Wilson*, 610 F.3d at 604.  Indeed, cases under the Rehabilitation Act serve as precedent for those under the ADA, and vice-versa.  *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1088 n.21 (11th Cir. 2007).

Title II of the ADA provides: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any entity." 42 U.S.C. § 12132.  To state a Title II claim under the ADA, a plaintiff generally must show "(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability."  *Am. Ass'n of People with Disabilities v. Harris*, 2011 WL 3117872, at *4 (11th Cir. July 27, 2011) (citing *Bircoll*, 480 F.3d at 1083).

As the Supreme Court has told us, "insofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."  *United States v. Georgia*, 546

---

[6] There is an additional requirement under the Rehabilitation Act (which again does not create an obstacle here) that the plaintiff must demonstrate that the defendant is a recipient of federal funds.  *Badgett ex rel. Badgett v. Alabama High Sch. Athletic Ass'n*, 2007 WL 2461928, at *3 (N.D. Ala. May 3, 2007); *see Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

U.S. 151, 159 (2006). A mentally disabled person involuntarily committed to a state institution has substantive liberty interests under the Fourteenth Amendment. *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982). These liberty interests include the right to reasonably safe conditions of confinement, to freedom from unreasonable bodily restraints, and to such minimally adequate training as reasonably might be required by these interests. *Id. at 315-319.* To determine whether an individuals's constitutional rights have been violated, the individual's liberty interests must be balanced against the relevant state interests. *Id*. at 321. The Eleventh Circuit has found that the conduct that violates a person's constitutional rights also violates Title II of the ADA, and the Supreme Court has assumed without deciding that this is so. *See Georgia*, 546 U.S. at 157 (reviewing Eleventh Circuit decision).

### A. Plaintiff's Rehabilitation Act Claims

Defendant argues that Plaintiff has not set forth a claim under the Rehabilitation Act, but that argument appears to be limited to its assertion that Plaintiff has not put forth sufficient facts as to the claim's second element. (Doc. # 26 at 3). To satisfy the second element of a Rehabilitation Act claim, a plaintiff must demonstrate that "he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity." *American Ass'n of People with Disabilities*, 2011 WL 3117872, at *4. Plaintiff alleges in the complaint that Defendant and Defendant's employees' failure to administer certain care and procedures to Wilson constituted exclusion from Defendant's services, programs, or activities and amounted to discrimination under the Rehabilitation Act and the ADA. (Doc. # 20 at ¶¶ 33-38). Specifically, Plaintiff claims that Partlow's Mental Health Workers failed to check on Wilson every thirty minutes and that Partlow employees failed to follow proper emergency procedures, such as

7

resuscitation efforts, when Wilson was tragically found dead in his room. (Doc. # 20 at 38a-f). The court finds that Plaintiff has alleged sufficient facts to allow the court to reasonably infer that Defendant is liable for the alleged conduct that would satisfy element two of the claim.[7]

Defendant also asserts that an alleged failure to follow protocol in caring for Wilson cannot constitute a violation of the Rehabilitation Act and that the claim must be dismissed. Defendant argues that Plaintiff's reliance on *Barnes v. Gorman*, 536 U.S. 181 (2002) is misplaced because that case only involves remedies available under the Rehabilitation Act and does not support the proposition that allegations of inadequate treatment are sufficient to set forth a claim under the Rehabilitation Act. (Doc. # 26 at 4-5). Defendant also criticizes Plaintiff's reliance on other cases, such as *Youngberg*, arguing that those decisions involve violations of constitutional rights and not the Rehabilitation Act. (Doc. # 26 at 4).

Violations of constitutional rights are part and parcel of a cause of action under Title II of the ADA. *See Georgia*, 546 U.S. at 159. The conduct that violated a person's constitutional rights can also satisfy the second element of a Title II ADA claim. *See id.* At 157. The same standards and precedent govern the decisions of cases under the Rehabilitation Act and the ADA. *See Bircoll*, 480 F.3d at 1088 n.21 (citations omitted). Therefore, cases such as *Youngberg* that discuss violations of constitutional rights also provide support for Plaintiff's claims under the Rehabilitation Act. Defendant's argument to the contrary is simply off the mark. Additionally, as Plaintiff correctly notes, *Barnes* is an example of the Court upholding a compensatory jury verdict where the state's

---

[7] To the extent that Defendant generally challenges Plaintiff's Rehabilitation claim, the court finds that Plaintiff has set forth enough facts to satisfy all elements of the claim. Both parties agree that Wilson was disabled and Defendant does not dispute Plaintiff's statement that Wilson resided at Partlow. Plaintiff has alleged sufficient facts in its complaint for a court to reasonably infer that Wilson did not receive certain required medical care because of his disability. Moreover, as the court determines that elements one and three of the Rehabilitation Act claim are sufficiently alleged, Plaintiff has alleged a plausible claim to relief under the Rehabilitation Act.

failure to provide the proper care to a disabled individual constituted discrimination under § 202 of the ADA and § 504 of the Rehabilitation Act. *Barnes*, 536 U.S. at 184. Plaintiff has alleged a plausible claim to relief under the Rehabilitation Act in its complaint sufficient to survive a motion to dismiss.[8]

### B. Plaintiff's ADA Claims

Defendant claims that, under the circumstances alleged in Plaintiff's complaint, it is immune from suit under the ADA. In particular, Defendant argues that Plaintiff's ADA claim is due to be dismissed because Plaintiff has not alleged that Wilson was *involuntarily* confined. (Doc. # 26 at 5-7). That argument fails for the following reasons.

First, it is clear that Defendant is subject to suit under the ADA so long as Defendant has violated Wilson's constitutional rights. *See Georgia*, 546 U.S. at 159. Here, Plaintiff has put forth sufficient factual allegations of constitutional violations. (Doc. # 20 at ¶¶ 35-55). Second, as to the "involuntarily confined" element, Plaintiff states in its complaint that Defendant maintains a facility for individuals with developmental and mental disabilities, that Wilson was a resident patient at Partlow, that Wilson suffered from severe mental and physical disabilities "that necessitated his placement at Partlow," and that Mental Health Workers were supposed to check on Wilson every thirty minutes. (Doc. # 20 at ¶¶ 3,9, 35, and 38a). Plaintiff cites the *Youngberg* holding that mentally challenged patients who have been involuntarily committed to a state institution have substantive liberty interests. (Doc. # 20 at ¶ 41). Defendant concedes that Wilson was disabled.

---

[8] To the extent that Defendant's motion to dismiss (Doc. # 23) or its reply brief (Doc. # 26) could be construed as contesting Plaintiff's assertion that Defendant has "*respondeat superior* liability for the conduct of its employees that violates the ADA and Rehab Act," the court notes that both of the Acts permit respondeat superior liability. *See T.W. ex rel. Wilson*, 610 F.3d at 604.

(Doc. # 26 at 3). Although Plaintiff's Amended Complaint has not explicitly stated that Wilson was involuntarily committed to Partlow, the pleadings put Defendant on notice that Plaintiff alleges that to be the case. That is, viewing the complaint in the light most favorable to Plaintiff, the court finds that there are sufficient facts to draw the reasonable inference that Plaintiff was involuntarily confined and that Defendant is liable for violating the rights of a mentally disabled patient involuntarily committed to a state institution. *See Iqbal*, 129 S. Ct. at 1949. Plaintiff has put forth a plausible claim for relief under the ADA sufficient to survive Defendant's motion to dismiss. Therefore, Defendant's motion to dismiss (Doc. # 23) is due to be denied.

### IV. Conclusion

Based on the foregoing, the court determines that Defendant's Motion to Dismiss Amended Complaint (Doc. # 23) is **DENIED**.

**DONE** and **ORDERED** this   29th   day of August, 2011.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE